**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | | |
|---|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | : : : | |
| Plaintiff-Applicant, | : : | Adv. Pro. No. 08-01789 (BRL) |
| v. | : : : | SIPA LIQUIDATION |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | : : : | |
| Defendant. | : | (Substantively Consolidated) |

---

In re

BERNARD L. MADOFF,

                Debtor.

---

| | | |
|---|---|---|
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | : : : : | |
| Plaintiff, | : : | |
| v. | : : | |
| VIZCAYA PARTNERS LIMITED, BANQUE JACOB SAFRA (GIBRALTAR) LTD. a/k/a BANK J SAFRA LIMITED, SIAM CAPITAL MANAGEMENT, ASPHALIA FUND LIMITED, and ZEUS PARTNERS LIMITED, | : : : : : : | Adv. Pro. No. 09-01154 (BRL) |
| Defendants. | : | |

---

**MEMORANDUM OF LAW IN SUPPORT OF THE**
**MOTION OF BANK J. SAFRA (GIBRALTAR) LIMITED TO**
**WITHDRAW THE REFERENCE TO THE BANKRUPTCY COURT**

                                                            Robinson B. Lacy
                                                            Joshua Fritsch
                                                            Angelica M. Sinopole
                                                            SULLIVAN & CROMWELL LLP
                                                            125 Broad Street
                                                            New York, New York  10004
                                                            (212) 558-4000

                                                            *Attorneys for Defendant Bank J. Safra*
                                                            *(Gibraltar) Limited*

TABLE OF CONTENTS

STATEMENT ................................................................................................................................. 3

STANDARD APPLICABLE TO THE MOTION ........................................................................ 6

ARGUMENT .................................................................................................................................. 7

I. The Court Should Confirm that the Section 546(e) Safe Harbor Applies in this Proceeding Under SIPA. ................................................................................................... 7

II. The Court Needs to Confirm the Good Faith Standards Applicable under SIPA and Sections 548(c) and 550(b) of the Bankruptcy Code. ................................................... 10

III. The Court Needs to Determine Whether SIPA and Section 550 Have Extraterritorial Application. ..................................................................................................................... 11

IV. *Stern v. Marshall* Requires Withdrawal of the Reference. ............................................. 12

V. The Reference Should Be Withdrawn Because the Bankruptcy Court Cannot Conduct a Jury Trial. ..................................................................................................................... 13

CONCLUSION ............................................................................................................................ 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Bear, Stearns Sec. Corp. v. Gredd*,
  No. 01-CV-4379 (NRB), 2001 U.S. Dist. LEXIS 10324 (S.D.N.Y. July 25, 2001) .................6

*Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*,
  462 B.R. 457 (S.D.N.Y. 2011) ..................................................................................................14

*DeWitt Rehab. & Nursing Ctr., Inc. v. Columbia Cas. Co.*,
  464 B.R. 587 (S.D.N.Y. 2012) ..................................................................................................14

*Dye v. Sachs (In re Flashcom, Inc.)*,
  361 B.R. 519 (Bankr. C.D. Cal. 2007)……………………………………………………...8

*Enron Corp. v. Bear, Stearns & Co. (In re Enron Corp)*,
  No. 01-16034 (AJG), 2005 WL 3832053 (Bankr. S.D.N.Y. Nov. 28, 2005) .........................11

*Granfinanciera, S.A. v. Nordberg*,
  492 U.S. 33 (1989) .............................................................................................................. 12-13

*Keene Corp. v. Williams Bailey & Wesner, L.L.P. (In re Keene Corp.)*,
  182 B.R. 379 (S.D.N.Y. 1995) ...................................................................................................7

*Meoli v. Huntington Nat'l Bank (In re Teleservices Group, Inc.)*,
  456 B.R. 318 (Bankr. W.D. Mich. Aug. 17, 2011) .................................................................13

*Morris v. Emprise Bank (In re Jones Storage & Moving, Inc.)*,
  No. 04-5106, 2005 Bankr. LEXIS 662 (Bankr. D. Kan. Apr. 14, 2005) .................................8

*Morrison v. National Australia Bank Ltd.*,
  130 S. Ct. 2869 (2010) ...................................................................................................... 2, 11-12

*Norex Petroleum Ltd. v. Access Indus., Inc.*,
  631 F.3d 29 (2d Cir. 2010) ................................................................................................. 11-12

*Official Comm. of Unsecured Creditors v. JPMorgan Chase Bank (In re M. Fabrikant & Sons, Inc.)*,
  394 B.R. 721 (Bankr. S.D.N.Y. 2008)……………………………………………………...8

09-01154-smb    Doc 63    Filed 03/30/12    Entered 03/30/12 16:31:20    Main Document
Pg 4 of 19

## TABLE OF AUTHORITIES
*(continued)*

**Page(s)**

**CASES**
*(continued)*

*Official Comm. of Unsecured Creditors v. Western United Life Assurance Co. (In re Tri-Valley Distrib., Inc.)*,
    452 B.R. 837 (Bankr. D. Utah 2011) ................................................................................11

*Orion Pictures Corp. v. Showtime Networks Inc. (In re Orion Pictures Corp.)*,
    4 F.3d 1095 (2d Cir. 1993)..............................................................................................7, 13

*Picard v. ABN Amro Bank (Ireland) Ltd.*,
    No. 11 Civ. 06849 (JSR) (S.D.N.Y. Jan. 11, 2012)………………………………...…..8, 9

*Picard v. Avellino*,
    No. 11 Civ. 3882 (JSR), 2012 WL 826602 (S.D.N.Y. Mar. 1, 2012) ...............................10, 13

*Picard v. Banco Bilboa Vizvaya Argentaria, S.A.*,
    No. 11 Civ. 07100 (JSR) (S.D.N.Y. Jan. 31, 2012)………………………………...…..8, 9

*Picard v. Ceretti*,
    No. 11 Civ. 07134 (JSR) (S.D.N.Y. Feb. 2, 2012)………………………………….....8, 9

*Picard v. Flinn Invs., LLC*,
    463 B.R. 280 (S.D.N.Y. 2011).....................................................................................6, 9, 13

*Picard v. HSBC Bank PLC*,
    450 B.R. 406 (S.D.N.Y. 2011).....................................................................................6, 7, 13

*Picard v. JPMorgan Chase & Co.*,
    454 B.R. 307 (S.D.N.Y. 2011)..............................................................................................6

*Picard v. Katz*,
    462 B.R. 447 (S.D.N.Y. 2011).................................................................................9, 10, 11

*Picard v. Kohn*,
    11 Civ. 1181 (JSR), 2011 U.S. Dist. LEXIS 101261 (S.D.N.Y. Sept. 6, 2011)....................12

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec., LLC)*,
    440 B.R. 243, 273 (Bankr. S.D.N.Y. 2010) ......................................................................4, 9

*Shugrue v. Air Line Pilots Ass'n Int'l (In re Ionosphere Clubs, Inc.)*,
    922 F.2d 984 (2d Cir. 1990)..................................................................................................6

# TABLE OF AUTHORITIES
*(continued)*

**Page(s)**

**CASES**
*(continued)*

*Stathopoulos v. Alford (In re McMillin),*
   448 B.R. 847 (M.D. Fla. 2011)......................................................................................8

*Stern v. Marshall,*
   131 S. Ct. 2594 (2011)..................................................................................2, 12, 13

*Tanaka v. Nagata,*
   868 P.2d 450, 76 Haw. 32 (Ct. App. 1994) ...................................................................8

*Thompson v. Jonovich (In re Food & Fibre Prot., Ltd.),*
   168 B.R. 408 (Bankr. D. Ariz. 1994)………………………………………………….8

*VFB L.L.C. v. Money's Trust (In re VF Brands, Inc.),*
   282 B.R. 134 (Bankr. D. Del. 2002) ........................................................................ 8-9

**STATUTES AND REGULATIONS**

11 U.S.C. § 546.............................................................................................. *passim*

11 U.S.C. § 548.............................................................................................. *passim*

11 U.S.C. § 550.............................................................................................. *passim*

15 U.S.C. § 78aaa, *et seq.* ............................................................................. *passim*

28 U.S.C. § 157.............................................................................................. *passim*

Defendant Bank J. Safra (Gibraltar) Limited ("BJSG") respectfully submits this memorandum of law in support of its motion, pursuant to 28 U.S.C. § 157(d), for an order withdrawing the reference of this adversary proceeding to the Bankruptcy Court. As this Court has recently recognized in other actions brought by the Trustee, a District Court must withdraw the reference under 28 U.S.C. § 157(d) if it determines that "resolution of the proceeding requires consideration of both title 11 and other laws of the United States." Because this case presents several issues that require consideration of both the Bankruptcy Code and important issues under other federal laws, the reference must be withdrawn.

*First*, this action requires the Court to determine whether section 546(e) of the Bankruptcy Code, which provides a broad safe harbor for the settlement of securities transactions, applies in this proceeding under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78aaa, *et seq*. In this action, the Trustee for the SIPA Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") is seeking to recover funds that BLMIS allegedly transferred to BJSG as custodian for a customer of BLMIS, Vizcaya Partners Limited ("Vizcaya"). The Trustee seeks to avoid these transfers as preferential and as actual and constructive fraudulent transfers pursuant to section 8(c)(3) of SIPA, 15 U.S.C. 78fff-2(c)(3), and sections 547 and 548 of the Bankruptcy Code, 11 U.S.C. §§ 547-48. However, if section 546(e) applies to these transfers, it would bar the Trustee's avoidance claims except for his claim under section 548(a)(1)(A) of the Bankruptcy Code.

*Second*, the Trustee's claims raise two separate issues concerning the duty of a direct or indirect customer of a stockbroker to inquire concerning the possibility that the stockbroker is engaged in a fraud. Vizcaya (and BJSG if, contrary to its position, it is deemed to be a transferee from which the transfers could be recovered under 11 U.S.C. § 550) was a net

loser, meaning that all of the payments it received from its BLMIS account were less than the amounts it invested in that account. Accordingly, Vizcaya (and BJSG, to the extent it is deemed to be a transferee) received the payments for equivalent consideration and any claim to avoid those transfers under section 548 is barred pursuant to section 548(c) if the transfers were received in good faith. Separately, the Trustee seeks to recover proceeds of the transfers that Vizcaya paid to defendant Zeus Partners Limited ("Zeus"). Section 550(b) bars a trustee from recovering transfers from a subsequent transferee that received the transfer in "good faith" and for value. Because Zeus received the funds for value when it received them when it redeemed shares of Vizcaya, this action requires determination of the standards for "good faith" with respect to a stockbroker under section 550(b).[1]

*Third*, this Court must consider an issue of first impression and determine whether SIPA and section 550(a) of the Bankruptcy Code have extraterritorial reach. In addition to the initial transfers from BLMIS, the Trustee is attempting to recover subsequent transfers that Vizcaya made, from its account with BJSG in Gibraltar, to the account of Zeus in Gibraltar. Vizcaya and Zeus are both organized in the British Virgin Islands. Because neither SIPA nor section 550 state that they apply to foreign transactions, the Supreme Court's decision in *Morrison v. National Australia Bank Ltd.*, 130 S. Ct. 2869 (2010), requires consideration of the possibility that those provisions do not apply to these subsequent transfers.

---

[1] BJSG also received approximately $6.4 million in alleged proceeds of the initial transfers when it redeemed shares of Zeus. (Am. Compl. ¶ 28.) The Trustee's claim to recover that money from BJSG as a subsequent transferee raises legal issues similar to his claim against Zeus. A copy of the Amended Complaint is annexed as Exhibit A to the Declaration of Joshua Fritsch, subscribed to March 30, 2012, submitted in support of the motion ("Fritsch Declaration"). While BJSG does not concede their accuracy, the allegations of this Complaint as set forth in the text of this memorandum are deemed to be true for purposes of this motion.

-2-

*Fourth*, in light of the Supreme Court's recent decision in *Stern v. Marshall*, 131 S. Ct. 2594 (2011), this proceeding should be withdrawn to determine whether the Bankruptcy Court may render a final judgment on the Trustee's claims, or whether instead they must be adjudicated by an Article III court. In addition, Zeus has requested a jury trial, and the parties have not consented to a jury trial in the Bankruptcy Court. Accordingly, permissive withdrawal is necessary to preserve judicial efficiency.

## STATEMENT

The Trustee commenced this action on April 9, 2009, by filing a Complaint asserting claims against BJSG and Vizcaya.[2] On September 30, 2009, the Trustee filed an Amended Complaint, adding additional defendants Zeus, Siam Capital Management ("Siam"), and Asphalia Fund Limited ("Asphalia"). (Am. Compl. ¶¶ 2, 20.) In the Amended Complaint, the Trustee alleges that the Securities and Exchange Commission (the "SEC") commenced a proceeding against Bernard L. Madoff ("Madoff") and BLMIS on December 11, 2008, alleging that they had engaged in fraud through the investment advisory activities of BLMIS. On December 15, 2008, the SEC consented to a combination of its action with an application of the Securities Investor Protection Corporation ("SIPC"), which alleged that BLMIS was unable to meet its obligations to its customers and, therefore, its customers required protection under SIPA. (Am. Compl. ¶ 7.) On the same day, the District Court granted the SIPC application and entered an order under SIPA appointing the Trustee and removing the case to this Court. (Am. Compl. ¶¶ 8-9.)

Madoff ran an investment advisory business at BLMIS in which he purported to invest BLMIS's investment advisory customers' funds in a basket of common stocks hedged by

---

[2] Fritsch Declaration at ¶ 2.

-3-

options. (Am. Compl. ¶ 16.) However, this investment advisory business was allegedly operated as a Ponzi scheme, and the money received from investors was not invested in stocks and options, but was used instead to pay withdrawals and to make other transfers. (Am. Compl. ¶¶ 17-19.)

The Trustee alleges that BJSG was the banker and custodian for Vizcaya, Zeus, Asphalia, and Siam. (Am. Compl. ¶ 28.) Vizcaya opened an account with BLMIS on December 21, 2001. (Am. Compl. ¶ 30.) Between January 2002 and the commencement of the SIPA proceeding, Vizcaya invested $327,249,925 with BLMIS. (Am. Compl. ¶ 33.) On or about August 29, 2008, BLMIS allegedly wired $30 million to BJSG "apparently for the benefit of Defendants Vizcaya and Zeus." (Am. Compl. ¶ 34.) On or about October 31, 2008, BLMIS allegedly wired $150 million to BJSG "which funds were subsequently transferred, in part, to Defendants Vizcaya, Siam, Zeus, and Asphalia, and [BJSG]." (Am. Compl. ¶ 35.) The Amended Complaint asserts claims to avoid and recover these two transfers under section 8(c)(3) of SIPA, 15 U.S.C. § 78fff-2(c)(3), and sections 547, 548, 550, and 551 of the Bankruptcy Code, 11 U.S.C. §§ 547-48, 550-51. (Am. Compl. ¶ 69-70, 72-82, 87-112.) Counts Two and Seven, for "Turnover and Accounting," seek a turnover of the transferred funds under 11 U.S.C. § 542 on the theory that they remain property of the estate. (Am. Compl. ¶¶ 83-86, 113-16.)[3]

On December 8, 2009, BJSG filed an Amended Answer to the Amended Complaint ("Am. Answer").[4] BJSG asserts that it was merely a conduit for the initial transfers

---

[3] In another adversary proceeding in the BLMIS SIPA Liquidation, the Bankruptcy Court has held that it is "constrained to find" that the Trustee may not recover allegedly voidable transfers by BLMIS on the theory that they are property of the estate subject to turnover pursuant to 11 U.S.C. § 542. *Picard v. Merkin (In re Bernard L. Madoff Inv. Sec., LLC)*, 440 B.R. 243, 273 (Bankr. S.D.N.Y. 2010).

[4] Fritsch Declaration ¶ 4, Ex. B.

and therefore is not a transferee from which the initial transfers can be recovered pursuant to 11 U.S.C. § 550. It also asserts that the Trustee's claims are barred by section 546(e) of the Bankruptcy Code, 11 U.S.C. § 546(e). (Am. Answer ¶¶ 160-183; 192-97.) In addition, the Amended Answer asserts that to the extent BJSG was deemed to be a transferee from which the transfers can be recovered, BJSG took those transfers for value and in good faith under section 548(c) of the Bankruptcy Code.

On July 13, 2010, the Trustee moved for a default judgment against Vizcaya, Siam, Asphalia, and Zeus, and on August 3, 2010, the Bankruptcy Court signed an order granting the motion, entering default judgments against those parties. (Docket No. 49, at 1-2.) On November 23, 2010, the Bankruptcy Court vacated the default judgment as to Zeus pursuant to a stipulation between the Trustee and Zeus. Under the stipulation, Zeus reserved all its "rights and defenses" to respond to the Amended Complaint.[5] On January 28, 2011, Zeus filed an Answer to the Amended Complaint.[6] Zeus also demanded a jury trial.[7]

The Bankruptcy Court has entered Case Management Orders of which the most recent provides that fact discovery will be completed by September 21, 2012 and expert discovery will be completed by January 25, 2013.[8] The parties have served initial disclosures and engaged in limited document discovery.[9] Neither BJSG (which would only have filed as custodian for Vizcaya) nor Zeus have filed proofs of claim in the BLMIS SIPA Liquidation.[10]

---

[5]   Fritsch Declaration ¶¶ 5-6, Ex. C.

[6]   A copy of Zeus's Answer is annexed to the Fritsch Declaration as Exhibit D.

[7]   Fritsch Declaration ¶ 7, Ex. D.

[8]   Fritsch Declaration ¶ 8.

[9]   Fritsch Declaration ¶ 9.

[10]  Fritsch Declaration ¶ 10.

## STANDARD APPLICABLE TO THE MOTION

Section 157(d) of the Judicial Code, 28 U.S.C. § 157(d), provides for mandatory and discretionary withdrawal of proceedings referred to the Bankruptcy Court:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d). This provision also applies to SIPA liquidation proceedings. *See, e.g.*, *Picard v. HSBC Bank PLC*, 450 B.R. 406, 409-10 (S.D.N.Y. 2011) (Rakoff, J.); *Picard v. JPMorgan Chase & Co.*, 454 B.R. 307, 313-14, 316 (S.D.N.Y. 2011).

Withdrawal is mandatory where, as here, "substantial and material consideration of non-Bankruptcy Code federal [law] is necessary for the resolution of the proceeding." *Picard v. Flinn Invs., LLC*, 463 B.R. 280, 283 (S.D.N.Y. 2011) (Rakoff, J.) (quoting *Shugrue v. Air Line Pilots Ass'n Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 995 (2d Cir. 1990)). The "requirements for mandatory withdrawal are satisfied if the proceeding requires consideration of a law outside of Title 11," even if the Bankruptcy Court has "familiarity" with the non-bankruptcy law in question. *JPMorgan*, 454 B.R. at 316.

In determining whether withdrawal of the reference is mandatory, the District Court "need not evaluate the merits of the parties' positions," but rather need only decide whether the proceeding will involve "substantial and material consideration" of federal non-bankruptcy law. *Bear, Stearns Sec. Corp. v. Gredd*, No. 01-CV-4379 (NRB), 2001 U.S. Dist. LEXIS 10324, at *10-11 (S.D.N.Y. July 25, 2001) (internal quotation marks and citations omitted). When a case concerns matters of "first impression," the "burden of establishing a right

-6-

to mandatory withdrawal is more easily met." *Id.* at \*6 (citations omitted). However, mandatory withdrawal is not limited to issues of first impression. *See Keene Corp. v. Williams Bailey & Wesner, L.L.P. (In re Keene Corp.)*, 182 B.R. 379, 382 (S.D.N.Y. 1995).

In addition, permissive withdrawal is warranted where it would promote judicial efficiency, prevent undue delay and cost to the parties, and avoid conflicting judicial interpretations. *See Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1101 (2d Cir. 1993); *HSBC*, 450 B.R. at 409 n.3.

## ARGUMENT

**I.     The Court Should Confirm that the Section 546(e) Safe Harbor Applies in this Proceeding Under SIPA.**

The Trustee seeks to recover the transfers that were received by BJSG as custodian for Vizcaya on the ground that the transfers are subject to avoidance as constructive and actual fraudulent conveyances and, with respect to the October 31, 2008 transfer, as a preference. However, under section 546(e) of the Bankruptcy Code, 11 U.S.C. § 546(e), the Trustee "may not avoid a transfer that is a . . . settlement payment . . . made by . . . a . . . stockbroker . . . or . . . a transfer made by . . . a . . . stockbroker . . . in connection with a securities contract" except under section 548(a)(1)(A) of the Bankruptcy Code, 11 U.S.C. § 548(a)(1)(A). Section 548(a)(1)(A) only applies to transfers made with actual intent to hinder, delay, or defraud creditors. In addition, unlike a claim to avoid a preference under section 547 of the Bankruptcy Code, a claim under section 548 is subject to the defense that the money was received for value and in good faith under section 548(c).

Accordingly, to the extent that the Trustee's claims against BJSG are not dismissed on the basis that BJSG was a mere conduit for the initial transfers, resolution of the Trustee's claims against BJSG requires a determination concerning the applicability of section

-7-

546(e). In addition, the Trustee's claims against Zeus depend on his establishing that the initial transfers to Vizcaya were subject to avoidance. The Trustee has argued that section 546(e) does not apply to claims against subsequent transferees under section 550.[11] However, in order to recover the proceeds of a transfer from a subsequent transferee under section 550, the Trustee must obtain a judgment binding on the subsequent transferee that the original transfers were voidable. *Morris v. Emprise Bank (In re Jones Storage & Moving, Inc.)*, No. 04-5106, 2005 Bankr. LEXIS 662, at *6-7 (Bankr. D. Kan. Apr. 14, 2005); *Dye v. Sachs (In re Flashcom, Inc.)*, 361 B.R. 519, 524-25 (Bankr. C.D. Cal. 2007); *see also Thompson v. Jonovich (In re Food & Fibre Prot., Ltd.)*, 168 B.R. 408, 416 (Bankr. D. Ariz. 1994). The default judgment against Vizcaya does not satisfy this requirement. *See Stathopoulos v. Alford (In re McMillin)*, 448 B.R. 847, 851 (M.D. Fla. 2011) (permitting transferee to "attack the underlying elements" of fraudulent transfer where transfer was avoided "by virtue of a default judgment"); *Thompson*, 168 B.R. at 415 (same). "'Fundamental principles of due process require that transferees who claim an interest in real property or its proceeds have a full and fair opportunity to contest claims of fraudulent transfer' . . . the trustee must always 'avoid' the transfer as against the subsequent transferee unless collateral estoppel or res judicata applies." *Official Comm. of Unsecured Creditors v. JPMorgan Chase Bank (In re M. Fabrikant & Sons, Inc.)*, 394 B.R. 721, 744, 746 (Bankr. S.D.N.Y. 2008) (quoting *Tanaka v. Nagata*, 868 P.2d 450, 454, 76 Haw. 32 (Ct. App. 1994)); *see also VFB L.L.C. v. Money's Trust (In re VF Brands, Inc.)*, 282 B.R. 134, 138-39

---

11   *See* Trustee's Opp. to Def.'s Mot. to Withdraw the Reference, *Picard v. Ceretti*, No. 11 Civ. 07134 (JSR), at 14-15 (S.D.N.Y. Feb. 2, 2012); Trustee's Opp. to Def.'s Mot. to Withdraw the Reference, *Picard v. Banco Bilboa Vizvaya Argentaria, S.A.*, No. 11 Civ. 07100 (JSR), at 13-15 (S.D.N.Y. Jan. 31, 2012); Trustee's Opp. to Def.'s Mot. to Withdraw the Reference, *Picard v. ABN Amro Bank (Ireland) Ltd.*, No. 11. Civ. 06849 (JSR), at 14-15 (S.D.N.Y. Jan. 11, 2012).

(Bankr. D. Del. 2002). Accordingly, all the Trustee's claims in this proceeding will require a determination concerning whether the transfers by BLMIS to Vizcaya were voidable, and the application of section 546(e) is fundamental to this proceeding.

Even with respect to initial transfers, the Trustee has consistently argued that the section 546(e) safe harbor has no application in a SIPA liquidation.[12] In another proceeding in the BLMIS SIPA proceeding, the Bankruptcy Court has agreed that section 546(e) does not apply in a SIPA proceeding. Noting that SIPA incorporates the Bankruptcy Code's provisions only "to the extent consistent with" SIPA, 15 U.S.C. 78fff(b), Judge Lifland asserted that "in the context of a SIPA proceeding, applying the safe harbor provision would eliminate most avoidance powers granted to a trustee under SIPA, negating its remedial purpose." *Merkin*, 440 B.R. at 267, 268 n.26.

In contrast, in *Picard v. Katz*, 462 B.R. 447, 451-52 (S.D.N.Y. 2011), this Court held that section 546(e) barred the Trustee from avoiding transfers made by BLMIS to its customers as settlement payments, except to the extent the Trustee alleged actual fraud under section 548(a)(1)(A). Shortly after the *Katz* decision, this Court stated in *Picard v. Flinn Investments, LLC*, 463 B.R. 280, 285 (S.D.N.Y. 2011), that the application of section 546(e) was a "fully-withdrawable issue" that requires the District Court to "resolve[] numerous questions of securities law." For example, "whether transfers from [BLMIS] completed securities

---

[12]   *See, e.g.*, *Picard v. Katz*, 462 B.R. 447, 452 (S.D.N.Y. 2011) ("Notwithstanding the plain language of section 546(e), the Trustee argues that it should not be applied here, because doing so would (supposedly) not accord with [SIPA's] purpose"); Trustee's Opp. to Def.'s Mot. to Withdraw the Reference, *Picard v. Ceretti*, No. 11 Civ. 07134 (JSR), at 14-15 n.13 (S.D.N.Y. Feb. 2, 2012); Trustee's Opp. to Def.'s Mot. to Withdraw the Reference, *Picard v. Banco Bilboa Vizvaya Argentaria, S.A.*, No. 11 Civ. 07100 (JSR), at 14 n.9 (S.D.N.Y. Jan. 31, 2012); Trustee's Opp. to Def.'s Mot. to Withdraw the Reference, *Picard v. ABN Amro Bank (Ireland) Ltd.*, No. 11. Civ. 06849 (JSR), at 14-15 n.16 (S.D.N.Y. Jan. 11, 2012).

transactions even though [BLMIS] never purchased or sold securities" on behalf of its customers is a question for which the Bankruptcy Code "provides little guidance," and which requires "significant interpretation of securities law in order to resolve." *Id.* (internal quotation marks omitted); *Picard v. Avellino*, No. 11 Civ. 3882 (JSR), 2012 WL 826602, at *3-4 (S.D.N.Y. Mar. 1, 2012) (withdrawing reference for same reasons).

## II. The Court Needs to Confirm the Good Faith Standards Applicable under SIPA and Sections 548(c) and 550(b) of the Bankruptcy Code.

This proceeding requires determinations concerning the effect of the federal securities laws on the good faith requirement of two provisions of the Bankruptcy Code, sections 548(c) and 550(b). First, the Trustee's claims against both BJSG and Zeus present the issue of whether the transfers by BLMIS to BJSG as custodian for Vizcaya are subject to avoidance under section 548. Because Vizcaya (and BJSG acting as custodian on behalf of Vizcaya) received less from BLMIS than it originally invested, the Trustee's claims under section 548 are subject to defense under section 548(c) if Vizcaya (or BJSG) received the transfers in good faith. *Katz*, 462 B.R. at 453-54. In *Katz*, this Court held that determining the standard of good faith applicable to the customer of a stockbroker requires consideration of the federal securities laws and withdrew the proceeding from the Bankruptcy Court to consider that issue. Transcript 32-33, *Picard v. Katz*, No. 11 civ. 3605 (JSR) (S.D.N.Y. July 1, 2011). The Court subsequently held that the SIPA Trustee is barred from recovering transfers subject to a "good faith" defense under section 548(c) unless the Trustee proves that the initial transferee was "willfully blind" because that transferee "was aware of a high probability" that BLMIS was engaged in illegal activity, yet "consciously avoided confirming that fact." *Katz*, 462 B.R. at 454-55 (citation omitted); *see also Avellino*, 2012 WL 826602, at *1-2 (same).

-10-

Separately, section 550(b)(1) bars the Trustee from recovering transfers from a subsequent transferee that received them "for value" and "in good faith, and without knowledge of the voidability of the transfer avoided." "Value" for this purpose only requires consideration sufficient to support a contract, and the transfers to Zeus satisfied this standard. *Official Comm. of Unsecured Creditors v. Western United Life Assurance Co. (In re Tri-Valley Distrib., Inc.)*, 452 B.R. 837, 850 (Bankr. D. Utah 2011). "Good faith" relates to the same issue as good faith under section 548(c), that is, whether the subsequent transferee should have been aware of the voidability of the original transfer. *Enron Corp. v. Bear, Stearns & Co. (In re Enron Corp.)*, No. 01-16034, 2005 WL 3832053, at *21 (Bankr. S.D.N.Y. Nov. 28, 2005) ("Courts have applied an objective standard for good faith of a transferee similar to that applied under section 548(c) of the Bankruptcy Code."). Accordingly, the same standard of "willful blindness" that this Court applied under section 548(c) should apply under section 550(b). It would be anomalous to apply a less stringent "good faith" standard against subsequent transferees than was applied to initial transferees in *Katz*. Because *Katz* only applied to initial transferees, however, the Court will be required to interpret SIPA and the Bankruptcy Code to confirm that this standard applies to subsequent transferees under section 550.

### III.    The Court Needs to Determine Whether SIPA and Section 550 Have Extraterritorial Application.

The transfers to Zeus that the Trustee seeks to recover in this proceeding occurred outside the United States and only involved foreign parties. In *Morrison v. National Australia Bank Ltd.*, 130 S. Ct. 2869 (2010), the Supreme Court held that section 10(b) of the Securities and Exchange Act did not apply extraterritorially, explaining that "[w]hen a statute [such as section 10(b)] gives no clear indication of an extraterritorial application, it has none." *Id.* at 2873; *see also Norex Petroleum Ltd. v. Access Indus., Inc.*, 631 F.3d 29, 31 (2d Cir. 2010) (citing

*Morrison* for the proposition that "absent an express intention by Congress of extraterritorial effect, a statute applies only domestically").

Likewise, neither SIPA nor section 550 expressly provides for extraterritorial application.  Accordingly, this Court will have to determine whether these laws can reach the entirely foreign transfers that the Trustee seeks to recover in this case.  Because these are issues of first impression, withdrawal of the reference is clearly mandatory under this Court's own precedent.  For example, in *Picard v. Kohn*, 11 Civ. 1181 (JSR), 2011 U.S. Dist. LEXIS 101261, at *7 (S.D.N.Y. Sept. 6, 2011), this Court removed a case brought by the Trustee after the Second Circuit held that RICO "cannot be applied extraterritorially."  In removing the case, the Court explained that "determining the precise contours of this relatively new doctrine will require significant interpretation of RICO."  *Id.*

### IV.     *Stern v. Marshall* Requires Withdrawal of the Reference.

The Supreme Court's recent decision in *Stern v. Marshall*, 131 S. Ct. 2594 (2011), also requires that this case be withdrawn from the Bankruptcy Court.  Withdrawal is required because the Court will have to interpret and apply *Stern* to determine whether the Bankruptcy Court has the authority under Article III of the Constitution to decide this case.

Specifically, *Stern* held that although a state law counterclaim asserted by Vickie Marshall was a core claim under 28 U.S.C. § 157(b)(2)(C), which includes within its ambit "counterclaims by the estate against persons filing claims against the estate," 131 S. Ct. at 2604-05, the Bankruptcy Court did not have the authority under Article III of the Constitution to finally decide that claim.  The Court rested its decision on the fact that Vickie Marshall's claims implicated only "private rights."  *Id*.

In explaining the distinction between public rights and the private rights that can only be adjudicated in an Article III court, the Supreme Court relied on *Granfinanciera, S.A. v.*

-12-

*Nordberg*, 492 U.S. 33 (1989), which held that the defendant in a fraudulent conveyance proceeding that had not filed a proof of claim in a bankruptcy case is entitled to a jury trial because the claim involves a private right. 131 S. Ct. at 2611 (citing *Granfinanciera*, 492 U.S. at 57-58, 64-65). The Court's opinion in *Granfinanciera* noted that fraudulent conveyance claims are "quintessentially suits at common law that more nearly resemble state-law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res." *Granfinanciera*, 492 U.S. at 56. By that reasoning, avoidance claims such as those at issue here fall squarely within the category of claims based on private rights that the Supreme Court in *Stern* held that the Bankruptcy Court could not finally decide. *Stern*, 131 S. Ct. at 2614 (footnote omitted).

As this Court explained in *Flinn*, cases asserting avoidance claims like those at issue here should be withdrawn for "the purpose of determining whether final resolution of [avoidance] claims . . . requires an exercise of 'judicial Power' that the bankruptcy court lacks." 463 B.R. at 288; *Avellino*, 2012 WL 826602, at *4 (same); *see also Meoli v. Huntington Nat'l Bank (In re Teleservices Group, Inc.)*, 456 B.R. 318, 338 (Bankr. W.D. Mich. 2011) (noting that section 550 claims that seek to recover subsequent transfers "require[] the oversight of a judicial officer" and cannot be adjudicated by a bankruptcy judge). Because neither BJSG nor Zeus has filed a proof of claim in the BLMIS SIPA Liquidation, the same result is required here.

**V.     The Reference Should Be Withdrawn Because the Bankruptcy Court Cannot Conduct a Jury Trial.**

The reference should be withdrawn when withdrawal would promote judicial efficiency. *See HSBC*, 450 B.R. at 409 n.3; *In re Orion Pictures Corp.*, 4 F.3d at 1101. Zeus has demanded a jury trial, it has not filed a proof of claims, and it is therefore entitled to a jury trial under the Seventh Amendment. *Granfinanciera*, 492 U.S. at 64. The Bankruptcy Court may not

preside over the jury trial without "the express consent of all parties," 28 U.S.C. § 157(e), and BJSG will not consent. *See DeWitt Rehab. & Nursing Ctr., Inc. v. Columbia Cas. Co.*, 464 B.R. 587, 593 n.2 (S.D.N.Y. 2012). Thus, this Court will ultimately have to try this case, and withdrawal of the reference would promote judicial efficiency. *Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 462 B.R. 457, 472 (S.D.N.Y. 2011) ("In addition, [defendant] has demanded a jury trial of all issues so triable. Therefore, its action must be finally adjudicated here." (internal citation omitted)).

## CONCLUSION

For the reasons set forth above, BJSG respectfully requests that the Court enter an order withdrawing the reference of this case to the Bankruptcy Court.

Dated: New York, New York
March 30, 2012

/s/ Robinson B. Lacy
Robinson B. Lacy
Joshua Fritsch
Angelica M. Sinopole
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004-2498
(212) 558-4000

*Attorneys for Defendant Bank J. Safra (Gibraltar) Limited*

-14-